IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TERENCE CALLAHAN, SR., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.   1:05cv1243 |
| ) | |
| KENNETH CHO, M.D. ) | |
| ) | |
|     <u>AND</u> ) | |
| ) | |
| VETERANS ADMINISTRATION/ ) | |
| VETERANS ADMINISTRATION ) | |
| MEDICAL CENTER ) | |
| ) | |
|     <u>AND</u> ) | |
| ) | |
| UNITED STATES OF AMERICA ) | |
|     Defendants. ) | |

**MEMORANDUM OPINION**

In this Federal Tort Claims Act (FTCA)[1] case, involving an allegation of medical malpractice stemming from a hip replacement operation at a Veterans Administration Hospital in West Virginia, two dispositive questions are presented at the summary judgment stage. The first question was presented and decided at the threshold dismissal stage and is revisited here *sua sponte*: It is whether plaintiff may proceed in this action given that no medical expert certificate accompanied the initial notice of suit, as required by West Virginia's Medical Professional Liability Act (MPLA).[2] The second question is simply whether plaintiff has presented a triable issue of fact with respect to his claim that the Veterans Administration (VA) surgeon failed to

---

[1] 28 U.S.C. § 1346(b).

[2] W.Va. Code § 55-7B-3.

1

meet the professional standard of care when he made a medical judgment not to remove a small needle fragment that had broken off and lodged in plaintiff's soft muscle tissue during the surgery.

For the reasons that follow, the government is entitled to summary judgment both because plaintiff failed to present the requisite certificate with his initial claim of suit and because plaintiff has presented no evidence to create a triable issue for the jury on whether the surgeon's decision to leave the needle fragment in plaintiff's muscle tissue was contrary to the governing standard of care.

I.[3]

The record reflects that plaintiff was admitted to the Veterans Administration Medical Center (VAMC) in Martinsburg, West Virginia, in March 2003, for a substance abuse treatment program. Approximately two weeks after entering the VAMC program, plaintiff began to experience pain in his left hip. He had previously been diagnosed with avascular necrosis (AVN), a degenerative hip condition that causes both substantial pain and bone deterioration.[4] To remedy this condition, plaintiff underwent a right hip replacement operation in 1997 at the VA Hospital in Washington, D.C. In 2003, the doctors at the VAMC in Martinsburg, including

---

[3] The facts recited here are derived from the summary judgment record and are essentially undisputed. Where disputes of material fact exist they are noted and analysis proceeds on the assumption favorable to plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] Avascular necrosis (AVN) refers to the collapse of the bones or joints brought about by the loss of blood supply. *Stedman's Medical Dictionary* 1026-27 (25th ed. 1990). It is often associated with alcoholism, and indeed plaintiff's AVN is attributable to his long history of drug and alcohol abuse.

one of the initial defendants in the case, Dr. Kenneth Cho,[5] determined that plaintiff was suffering from the same degenerative bone condition in his left hip that had led to his 1997 right hip replacement. Plaintiff's severe left hip pain did not subside and indeed was aggravated when he accidentally fell and landed directly on his left hip.

In October 2003, Dr. Cho recommended to plaintiff that another hip replacement operation was needed to alleviate plaintiff's severe pain. Plaintiff accepted this recommendation and consented to the surgery, which was performed by Dr. Cho on October 27, 2003.[6] In the course of this lengthy surgical procedure, Dr. Cho enlarged plaintiff's femur canal and inserted the prosthetic hip.[7] Dr. Cho then proceeded to repair the capsule, suture the muscle, and close the wound. As he was closing the joint capsule, the Ethibond needle Dr. Cho used for suturing broke off and a small fragment lodged within the plaintiff's muscle tissue, approximately six inches inside the hip. Dr. Cho searched for the needle fragment, but even with the assistance of specialized surgical instruments he was unable to locate it without more invasive searching. Ultimately, Dr. Cho determined that a prolonged search would destroy significant portions of muscle tissue and yet still not guarantee a successful retrieval of the small fragment. Moreover, based on his experience, Dr. Cho did not anticipate that the small needle

---

[5]The complaint and the original case caption mistakenly spelled defendant's name as "Chou."

[6]Dr. Cho has been practicing orthopaedic medicine for over forty years. He is certified by the American Board of Orthopaedic Surgery and has active licenses to practice as a physician in the District of Columbia and Virginia. Over the last forty years he has (I) participated in continuing medical education courses, (ii) conducted research, (iii) published various papers and (iv) taught at Georgetown University Medical School.

[7]In his deposition, Dr Cho stated that the procedure was complicated by plaintiff's size (over 300 lbs) and age (41).

3

fragment would cause the plaintiff any harm. Given these facts and circumstances, Dr. Cho made a medical judgment that, on balance, it was better to leave the needle fragment in the tissue because further invasive searching would likely be more harmful to plaintiff than leaving it in the tissue. Acting on this judgment, Dr. Cho ended his search and completed the surgery. Aside from the broken needle, there were no complications during plaintiff's surgery or postoperative recovery.

At a postoperative treatment session, Dr. Cho informed plaintiff about the needle fragment. Dr. Cho explained that the surgical team had decided against removal of the small needle fragment based on the length of time that had elapsed during the surgery, the risks to plaintiff of continuing to search invasively, and the remote chance that the small fragment would cause plaintiff any harm.

Plaintiff continues to experience severe pain in his left hip and attributes his pain to the needle fragment left inside his hip, which he contends should have been found and removed at the time of the surgery. Thus, on October 26, 2005, plaintiff filed this FTCA medical malpractice claim against Dr. Cho, the Veterans Administration, and the VAMC in Martinsburg, West Virginia, alleging that Dr. Cho negligently performed the hip replacement surgery and, as a result of this negligence, plaintiff suffered severe and debilitating hip pain. Pursuant to 28 U.S.C. § 2679(d)(2), orders issued substituting the United States for all named defendants.[8]

---

[8] 28 U.S.C. § 2679(d)(2) authorizes substitution of the United States as defendant "upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose. . ." The appropriate certification was supplied for all defendants and an order issued with respect to Dr. Cho. *See Callahan v. Chou*, 1:05cv1243 (E.D.Va. December 30, 2005) (Order). Inadvertently this order did not require the same substitution with respect to the Department of Veterans Affairs; this omission has now been corrected. *See Callahan v. Chou*, 1:05cv1243 (E.D.Va. July

Also a threshold dismissal motion by the government was denied, and at the close of discovery, the government filed the motion for summary judgment that is addressed here.

## II.

The bench ruling denying the government's threshold dismissal motion was based on the view that even assuming the applicability of the West Virginia MPLA, that law did not require that a medical expert certificate accompany the complaint where, as then appeared to be the case, a plaintiff's case could proceed on the basis of *res ipsa loquitur*.  Now on the basis of a more fully developed record, it is apparent that this ruling must be revisited.

Analysis of this issue properly begins with the recognition that the FTCA is a limited waiver of sovereign immunity.  While the FTCA waives sovereign immunity with respect to actions for personal injury and property damage caused by the negligent or wrongful acts of a government employee acting within the scope of his employment, it explicitly limits this waiver by stating that the government is only "liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  In other words, the United States is subject to suit and liability for personal injuries "in the same respect as a private person under the law of the place where the act occurred," and even then prejudgment interest and punitive damages are excluded.  *See Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).  Thus, it follows that because the alleged negligent acts in this case occurred at the VAMC in Martinsburg, West Virginia, the MPLA, West Virginia's medical malpractice law, governs the

---

6, 2006) (Order).

government's liability here.⁹  And it further follows that if the MPLA requires that a medical certificate accompany the filing of a medical malpractice complaint, then, absent some exception to this requirement, plaintiff's failure to comply with this requirement must be fatal to his FTCA claim if it would be fatal to a medical malpractice action governed by the MPLA.  It is necessary, therefore, to examine the nature of the MPLA medical certificate requirement, its exceptions, and the consequences of not complying with it.

The MPLA makes clear that a claimant must obtain a medical screening certificate of merit to accompany the initial notice of suit, as a prerequisite for filing an action against a health care provider.  *See* W.Va. Code § 55-7B-6(b).  The MPLA also prescribes the certificate's contents and authorship requirements.  Specifically, it must be executed under oath by "a health care provider qualified as an expert under the West Virginia Rules of Evidence," (presumably in this case an orthopaedic surgeon familiar with the West Virginia standard of care in this specialty) and the certificate must state:

> (1) the expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death.

W.Va. Code § 55-7B-6(b).  Significantly, under West Virginia law, failure to comply with the

---

⁹Although the Fourth Circuit has not specifically ruled on whether the MPLA applies to FTCA claims brought against federal health care providers in West Virginia, several district courts have applied MPLA provisions to evaluate FTCA claims.  *See Wilson v. United States*, 375 F.Supp.2d 467, 470 (E.D.Va. 2005) (citing *Stanley v. United States,* 321 F.Supp.2d 805 (N.D.W.Va. 2004); *Osborne v. United States*, 166 F.Supp.2d 479 (S.D.W.Va. 2001); *Bellomy v. United States*, 888 F.Supp. 760 (S.D.W.Va. 1995)).  Additionally, the Fourth Circuit has upheld the application of the analogous Virginia Medical Malpractice Act in an FTCA case involving federal health care providers in Virginia.  *See Starns v. United States*, 923 F.2d 34 (4th Cir. 1991).

certificate requirement is grounds for prompt dismissal of a claim. *See Stanley v. United States*, 321 F.Supp.2d 805, 808 (N.D.W.Va. 2004) (dismissing plaintiff's FTCA claim for failure to submit a screening certificate). Equally significant is that the certificate requirement may be excused only if "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." W.Va. Code § 55-7B-6(c). In this event, claimants wishing to rely on this exception must nonetheless "file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of an actual certificate of merit." *Id.*

As a general rule, a plaintiff is not required to provide a medical screening certificate when the plaintiff's case will not require expert medical witnesses.[10] Yet, this exception is not easily invoked, as a plaintiff seeking to do so must overcome the general presumption in West Virginia medical malpractice law that "negligence or want of professional skill can be proved only by expert witnesses." *McGraw v. St. Joseph's Hospital*, 488 S.E.2d. 389, 394 (W.Va. 1997) (citing Syl. pt. 2, *Roberts v. Gale*, 139 S.E.2d 272 (W.Va. 1965)). It is only where the

> lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience [that] failure to present expert testimony . . . is not fatal to a plaintiff's prima facie showing of negligence.

*Id.* (quoting Syl. pt. 4, *Totten v. Adongay*, 337 S.E.2d 2 (W.Va. 1985)). For example, in *Totten*, no expert testimony was required to establish the doctor's negligence for failing to diagnose and treat a fracture that was clearly visible from the x-ray, even to a layperson's eyes. 337 S.E.2d at

---

[10]This sensible exception to the certificate requirement is fully consistent with the requirement's underlying rationale, namely "to prevent the making and filing of frivolous medical malpractice claims and lawsuits and to promote the pre-suit resolution of non-frivolous medical malpractice claims." *Hinchman v. Gillette*, 618 S.E.2d 387, 394 (W.Va. 2005).

5; *see also McGraw*, 488 S.E.2d at 397 (permitting jury to infer that allowing a patient to fall out of the hospital bed breached the duty of care when plaintiff offered no expert testimony to that effect). These examples are the exception to the general rule, however, and proof of negligence in most medical malpractice cases will require a medical expert to explain the applicable medical standard of care.

As a subset to the common knowledge exception, a plaintiff may rely on the doctrine of *res ipsa loquitur* to support a medical malpractice claim. *Res ipsa loquitur* translates to "the thing speaks for itself," and the doctrine can be applied where the facts and circumstances that lead up to an injury or damages raise a presumption or permit an inference of negligence on the part of the defendant. *Bronz v. St. Jude's Hosp. Clinic*, 402 S.E.2d 263, 265 (W.Va. 1991). The doctrine is not applicable unless three essential elements are present: (1) the instrumentality which causes the injury or damage must be under the exclusive control and management of the person charged with the negligence; (2) the plaintiff must be without fault; and (3) the injury or damage must be such that in the ordinary course of events it would not have happened had the one in control of the instrumentality used due care. *Id.* at 266. In a *res ipsa loquitur* case, the need for expert medical testimony is eliminated. *Neary v. Charleston Area Med. Ctr.*, 460 S.E.2d 464, 466 (W.Va. 1995) (citing *Farley v. Meadows*, 404 S.E.2d 537, 539 (W.Va. 1991)). The number of malpractice cases where the *res ipsa loquitur* exception applies is quite limited because it can only be invoked in cases "where defendant's negligence is the *only* inference that can reasonably and legitimately be drawn from the circumstances." *Neary*, 460 S.E.2d at 467 (emphasis added). The classic example of *res ipsa loquitur* in the medical malpractice context is the surgeon who, in the course of an operation, unwittingly leaves a surgical sponge or scalpel

8

inside the patient, which is not found until after the operation is completed. *See Farley*, 404 S.E.2d at 539. Simply put, in medical malpractice surgery cases, *res ipsa loquitur* applies only in those situations where the sole logical explanation for the event is the surgeon's negligence. For example, in *Neary*, the court found *res ipsa loquitur* inapplicable where plaintiff's post-surgical bacterial infection could be attributed to at least six different causes, several of which did not implicate the surgeon. 460 S.E.2d at 467. Likewise in *Farley*, *res ipsa loquitur* was found inapplicable to a failed tubal ligation because there were plausible explanations for the result that did not involve the surgeon's negligence. 404 S.E.2d at 539. In short, *Neary* and *Farley* illustrate the difficulty plaintiffs face in West Virginia when they seek to avoid or dispense with the MPLA's certificate requirement in medical malpractice cases.

These principles, applied here, point persuasively to the conclusion that plaintiff in this case cannot avoid the MPLA's medical certificate requirement. This is not a case warranting the application of *res ipsa loquitur*. In sharp contrast to the typical *res ipsa loquitur* case where a surgeon unwittingly and inadvertently leaves a sponge or other foreign object inside a patient's body, the surgeon here did not unwittingly or inadvertently do anything. To the contrary, Dr. Cho was fully aware that the needle had broken and that a small fragment had lodged in plaintiff's muscle tissue. He attempted to locate the fragment so he could remove it. When the fragment was not found, Dr. Cho had to make a professional medical judgment: Either undertake more invasive searches for the fragment, with the attendant risk of significant harm to plaintiff's muscle tissue, or leave the fragment in the tissue given that it would not likely cause harm or pain. This is a quintessential professional medical judgment, which if called into question in a lawsuit, can be resolved only by reference to expert opinion testimony. Establishing negligence

under these circumstances is not a simple *res ipsa loquitur* inference, nor would the standard of care fall within the common knowledge or understanding of judges or lay jurors.

Although West Virginia courts have not decided a broken needle case similar to the one presented here, other courts have done so and clearly rejected *res ipsa loquitur* under similar circumstances. As these cases reflect, neither the breaking of the needle, nor the surgeon's decision to leave the remaining fragment inside the patient has been found sufficient to invoke *res ipsa loquitur*. The closest case factually is *Williams v. Dameron*, 246 S.E.2d 586 (N.C.Ct.App. 1978), where a portion of a scalpel broke off during a back surgery and was embedded within the patient's muscle tissue. Plaintiff's assertion of *res ipsa loquitur* was rejected where the surgeon attempted to locate and retrieve the broken piece for thirty minutes, but ultimately ended the search because he wanted to minimize blood loss and because he did not expect the scalpel fragment to harm the patient. In *Cebula v. Benoit*, 652 S.W.2d 304, 307 (Mo.Ct.App. 1983), the Missouri Court of Appeals held that needle breakage during the course of surgery does not constitute prima facie evidence of negligence because "[n]eedles may break from various causes, as from an unobservable and unknown defect in the needle . . . as well as from an improper usage or method. And such break may occur in spite of all the care and skill which a physician or dentist may employ." *Id.* (quoting *Williams v. Chamberlain*, 316 S.W.2d 505 (Mo. 1958)). Finally, in *Wagner v. Deborah Heart and Lung Ctr.*, 588 A.2d 860, 862, 863 (N.J. Super.Ct.App.Div. 1991), a New Jersey court distinguished a case where the surgeon intentionally left a broken needle tip in the sternum of a patient from situations where a surgeon inadvertently leaves sponges or other surgical instruments inside the patient. In the latter situations, the doctrine of *res ipsa loquitur* could be applied. However, with evidence that a surgeon intentionally refrained from removing an embedded surgical tool based on his/her

medical judgment, as in *Wagner*, the court ruled that the doctrine of *res ipsa loquitur* should not be applied. *Id*.

In summary, this is not a res ipsa loquitur case. Nor is there any other reason to excuse plaintiff's failure to comply with the West Virginia MPLA's screening certificate requirement. Accordingly, plaintiff's failure to present such a certificate at the time of the complaint's filing is fatal to his claim.

**III**.

The principles governing disposition of defendant's motion for summary judgment are too well-settled to require extensive citation or elaboration. It is enough to note that because plaintiff has the burden of proof at trial to show medical negligence and causation, summary judgment is appropriate where it is clear that plaintiff has not adduced any evidence on these issues sufficient to create triable issues for the jury. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Cray Comn., Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir. 1994). Measured by this standard, defendant is entitled to summary judgment for reasons that mirror those compelling dismissal of plaintiff's complaint for failure to comply with the MPLA's requirement to provide a medical screening certificate at the time the action was filed.

Most of the essential material facts in this case are undisputed, including the events leading up to the operation, the operation itself, the needle breakage, and the factual circumstances surrounding the surgeon's medical judgment to refrain from further, more invasive searching, for the small needle fragment and allow it to remain in the tissue. What is sharply disputed is whether this judgment was within the standard of care for orthopaedic surgeons in West Virginia and whether plaintiff's continuing pain is attributable to the small needle fragment

left in his hip muscle tissue. Both of these issues are essential elements that plaintiff must establish to prevail in a medical malpractice claim under the MPLA.[11]

West Virginia law stipulates that medical experts must establish the applicable standard of care in medical malpractice cases. W.Va. Code § 55-7B-7(a). The only exceptions to this requirement, where the breach of duty is so gross as to be apparent or the standard is within the common knowledge of lay jurors, are the same as the exceptions to the medical certificate requirement. Neither exception applies to this case, as is more fully explained in Part II *supra*. Thus, plaintiff must present a medical expert to meet his burden on this element of the medical malpractice claim. At the summary judgment stage, plaintiff's failure to provide the required expert testimony is a sufficient basis to grant summary judgment for the defendant. *See, e.g., Neary*, 460 S.E.2d at 469 (granting summary judgment for defendant when plaintiff did not provide an expert to establish standard of care for back surgeons); *Farley*, 404 S.E.2d at 540 (rejecting plaintiff's *res ipsa loquitur* case and awarding defendant summary judgment when plaintiff failed to present a medical expert to establish standard of care for tubal ligation).

Even assuming *arguendo*, that plaintiff's initial failure to provide expert testimony could be excused by a warranted application of *res ipsa loquitur*, that doctrine's effect has been effectively rebutted by the government's medical experts. The government has offered the depositions and affidavits of the operating surgeon, Dr. Cho, and a medical expert's affidavit to

---

[11]W.Va. Code § 55-7B-3 establishes two necessary elements of proof for medical malpractice cases:
>(1) the health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances and (2) that this failure was the proximate cause of plaintiff's injury.

establish the applicable standard of care and to compare Dr. Cho's conduct to that standard. Dr. Steven Hughes, an orthopaedic surgeon with twenty years of experience,[12] evaluated the records of plaintiff's treatment at the Martinsburg VAMC and provided an affidavit setting forth his opinion as to the applicable standard of care, concluding that there had been no breach of that standard by Dr. Cho. According to Dr. Hughes, a surgeon confronting a broken surgical tool lodged in a patient's muscle tissue during an operation must comply with the West Virginia standard of care, namely to (1) assess the risk and severity of possible tissue damage resulting from the lodged tool and use an appropriate level of retrieval intervention commensurate with that risk, and (2) inform the patient of the complication. In Dr. Hughes' expert opinion, Dr. Cho's conduct with respect to plaintiff's surgery and post-operative care met this standard.

Just as he supplied no medical screening certificate to accompany his initial notice, so, too, has plaintiff presented no expert opinion testimony to rebut defendant's expert opinion. Plaintiff's only attempt to rebut Dr. Hughes is his own lay assessment that Dr. Cho breached the standard of care. This lay assessment falls far short of what West Virginia medical malpractice law requires; it is insufficient to establish a genuine issue of fact and thus insufficient to defeat defendant's motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

For the foregoing reasons, the United States' motion for summary judgment must be granted.

An appropriate order will issue.

---

[12]Dr. Hughes medical training and expertise are well-established in the summary judgment record and his qualifications are not a matter of dispute in the case.

13

|  |  |
|---|---|
| | _____/s/_____ |
| July 6, 2006 | T. S. Ellis, III |
| Alexandria, Virginia | United States District Judge |